IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

KYLE CHYMA,

Plaintiff,

vs.

TAMA COUNTY SCHOOL BOARD,
LARRY MOLACHEK, STEVE BURR,
AND ERNIE TOMLINSON,

Defendants.

No. C07-0056

**RULING ON MOTION FOR
SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *The Parties*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *OWI Arrest*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Bus Incident*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . 9

V.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     A.    *Violation of Constitutional and Statutory Rights*. . . . . . . . . . . . 10
         1.   *Were Chyma's Due Process Rights Violated?*. . . . . . . . . . . 10
         2.   *Did Defendants Comply With Iowa Code Section 282.4?*. . . . 16
     B.    *Invasion of Privacy*. . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         1.   *Were Chyma's First Amendment Rights Violated?*. . . . . . . . 18
         2.   *Will FERPA Support a Section 1983 Claim?*. . . . . . . . . . . 21

VI.   SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII.  ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 9) filed by the Defendants on June 13, 2008; the Amended Resistance (docket number 18) filed by the Plaintiff on August 1, 2008; and the Reply (docket number 22) filed by the Defendants on August 8, 2008. The parties' requests for oral argument are denied. Pursuant to Local Rule 7.c, the Motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On April 27, 2007, Plaintiff Kyle Chyma filed a Petition for Damages (docket number 2-4) in the Iowa District Court for Tama County. The action was removed to the United States District Court for the Northern District of Iowa on June 7, 2007. The parties consented to disposition of the case by a United States Magistrate Judge, and trial is now scheduled before the undersigned on October 20, 2008.

On June 13, 2008, Defendants filed the instant Motion for Summary Judgment, requesting that Plaintiff's claims be summarily dismissed.

## III. RELEVANT FACTS

### A. The Parties

Plaintiff Kyle Chyma ("Chyma") is 20 years old. In the fall of 2005, when the events giving rise to this action occurred, Chyma was 17 years old and resided with his parents, Julie Chyma and Todd Chyma.[1] At that time, Chyma was entering his senior year at South Tama County High School.

Chyma concedes that Defendant "Tama County School Board" is properly identified as "Board of Directors of the South Tama County Community School District."[2]

---

[1] In her Affidavit filed in opposition to the Motion for Summary Judgment (docket number 18-7), Julie identifies herself as "Julie Chyma." In her deposition taken on April 25, 2008, however, Julie states that her full name is Julie Valline-Chyma. *See* Deposition of Julie Ann Valline-Chyma (docket number 9-4 at 28).

[2] *See* Plaintiff's Brief in Opposition (docket number 18-2 at 3, n.1).

Defendant Larry Molachek ("Molachek") was superintendent of schools of the South Tama County Community School District at that time. Defendant Steve Burr ("Burr") was the principal at South Tama Community High School. Defendant Ernie Tomlinson ("Tomlinson") was the athletic director at the South Tama Community High School.

### B. OWI Arrest

On August 6, 2005, Chyma was arrested and charged with operating a motor vehicle while intoxicated ("OWI").[3] The football season was about to begin and Chyma knew that possession or use of alcohol was a problem regarding participation in extracurricular activities.[4] Following Chyma's arrest, his mother contacted Mike Stein, an assistant football coach at South Tama High School. Julie Chyma asked Stein to "come with us" to discuss the matter with Tomlinson, the athletic director. At the meeting on August 8, 2005, Chyma, his mother, and Tomlinson all signed a "behavioral contract," requiring Chyma to perform 15 hours of community service, forfeit his participation in one football game, and obtain a substance abuse evaluation.[5]

According to Julie Chyma, "we were led to believe that nobody else was to know about this, other than the principal of the school."[6] In her deposition, however, Julie Chyma complained that her son was "approached by the National Honor Society teacher

---

[3] In their Statement of Material Facts (docket number 9-2), Defendants state that Chyma was arrested "on or about August 8, 2005." In his Response (docket number 18-3), Chyma admits the allegation and refers to "the August 8, 2005, incident." In her deposition, however, Julie Chyma testified that her son was arrested on Saturday, August 6, 2005, and the meeting with the athletic director occurred on the following Monday, August 8, 2005. *See* Deposition of Julie Ann Valline-Chyma (docket number 9-4 at 28). This testimony is consistent with the Behavioral Contract signed on August 8, 2005.

[4] *See* Deposition of Kyle Chyma (docket number 9-4 at 21).

[5] *See* Behavioral Contract (docket number 9-6 at 6).

[6] *See* Deposition of Julie Ann Valline-Chyma (docket number 9-4 at 29); Tr. 6:10-12.

in front of students," who "made a fool of him," and "humiliated him in front of students."[7] Julie Chyma's testimony was based on information allegedly given to her by her son. In his deposition, however, Chyma testified that the National Honor Society sponsor "*pulled me into her office* one day and said that Mr. Tomlinson had came up to her and said that I got an OWI or whatever."[8] (emphasis added)

During the first week of the school year, Karen O. Hensler, who at that time was a teacher at the high school and a co-sponsor of the National Honor Society, met with Tomlinson and Cynthia Chyma (another co-sponsor of the National Honor Society) to discuss Chyma's OWI charge.[9] In her Affidavit filed in support of the Motion for Summary Judgment, Hensler avers that she "had already known [about the charge] because Cynthia Chyma had relayed this information to me as a co-sponsor of NHS before the meeting."[10]

Chyma concedes that Tomlinson did not inform any students of his OWI charge.[11] On the other hand, Chyma testified that he told some friends of his arrest and also apologized to the football team before the first game, although "I just told them I got in trouble. I didn't tell them what happened."[12]

---

[7] *See* Deposition of Julie Ann Valline-Chyma (docket number 9-4 at 29-30); Tr. 8:6-8 and 9:10-14.

[8] *See* Deposition of Kyle Chyma (docket number 9-4 at 24); Tr. 44:14-16.

[9] The record is imprecise regarding what relationship, if any, Cynthia Chyma has to Plaintiff.

[10] *See* Affidavit of Karen O. Hensler (docket number 9-6 at 4).

[11] *See* Plaintiff's Response to Defendant's Statement of Material Facts (docket number 18-3 at 6).

[12] *See* Deposition of Kyle Chyma (docket number 9-4 at 24-25); Tr. 44:21-45:25.

## C. Bus Incident

On Friday, October 28, 2005, Chyma was caught trying to bring a container with alcohol onto a team bus headed for a football game.[13] On the bus were football team members, coaches, and cheerleaders. Chyma admits that he knew there was alcohol in the container and knew "that involvement with alcohol on school grounds could subject him to discipline, such as being suspended from school."[14]

On the following Monday, October 31, 2005, Chyma was called to the office and questioned about the incident.[15] Chyma prepared a handwritten description of the events, which he then signed and dated.

> On Friday Nolan called me and told me to come grab the water bottle that he had. I was on the bus. I didn't think anything of it and went and got it and brought it back to the bus. When I got on coach asked to see it so I gave it to him. He took it and told me to go sit down.

---

[13] The parties dispute the nature of the container. Defendants refer to it as "a bottle," while Plaintiff insists that it was "a cup, not a bottle." *See* Plaintiff's Response to Statement of Material Facts (docket number 18-3) at 7. In his Affidavit filed in opposition to the Motion for Summary Judgment, Chyma admits that "I got onto the bus with a cup that contained alcohol in it." *See* Affidavit of Kyle Chyma (docket number 18-6) at 2. In his deposition, Chyma testified that "my friend brought a bottle, it was like a water bottle, there was some alcohol in it, and I took it on the bus, and Coach asked to see it." *See* Deposition of Kyle Chyma (docket number 9-4 at 21); Tr. 32:13-16. Whether the container was a bottle or cup, however, is not a material fact.

[14] *See* Plaintiff's Response to Statement of Material Facts (docket number 18-3 at 7).

[15] There is some question as to whether he met with Dan Lopez (the guidance counselor), Steve Burr (the principal), or both. *See* Affidavit of Steve Burr (docket number 22-2).

Appendix of Documents, Exhibit N (docket number 9-6 at 7). In his Affidavit filed in opposition to the Motion for Summary Judgment, Chyma admits that he lied to Dan Lopez, the guidance counselor, and "denied knowing alcohol was in the cup."[16]

Chyma claims that his parents were called to the office that day and Steve Burr, the high school principal, joined in the discussion. According to Chyma, he was suspended immediately and not allowed to go to the afternoon classes. Burr confirms that Chyma was suspended effective immediately following the meeting, but claims that the meeting with Chyma's parents did not occur until the following day, November 1, 2005. Burr notes that Chyma's attendance report reflects that he was not absent on Monday, October 31, or the morning of Tuesday, November 1, but was suspended during the afternoon of Tuesday, November 1. *See* Period Attendance Report of Kyle Chyma (docket number 22-2 at 3). In his Petition for Damages (docket number 2-4), Chyma alleges that "[o]n or about November 1, 2005, Burr accused Chyma of consuming alcohol on school grounds."

In his responses to Defendants' Statement of Material Facts, Chyma denies that he "was afforded the opportunity to present his version of the events regarding the bus incident to the school guidance counselor and to the principal," citing his affidavit and the affidavits of his parents.[17] In fact, the affidavits support Defendants' contention that Chyma *was* "given an opportunity to present his version of the events." In his affidavit, Chyma states that in the meeting with the guidance counselor "I was asked about the October 31, 2005 [sic] school bus incident."[18] The affidavits of Chyma's parents also confirm that the incident was discussed during the meeting.[19] Chyma suggested in his

---

[16] *See* Affidavit of Kyle Chyma (docket number 18-6 at 2).

[17] *See* Plaintiffs' Response to Statement of Material Facts (docket number 18-3 at 7), ¶ 27.

[18] *See* Affidavit of Kyle Chyma (docket number 18-6 at 2), ¶ 3.

[19] *See* Affidavit of Julie Chyma (docket number 18-7 at 2), ¶ 3:

(continued...)

deposition that he was given an opportunity to describe what happened[20] and it is undisputed that he wrote out a description of the events.[21]

In any event, it is undisputed that Chyma was suspended for ten school days, running through Monday, November 14, 2005. Burr confirmed the suspension in a letter to Chyma's parents, dated November 4, 2005.[22] In addition, it was determined by Burr that Chyma would be placed "at the alternative high school for a period of at least one term."[23] Furthermore, Chyma was not permitted to participate in wrestling practice from November 14, 2005 through December 13, 2005, and was prohibited from participating in any wrestling meets until January 6, 2006.[24] Kyle was also ordered to complete 25 hours of community service prior to returning to competition.

South Tama County High School operated on a four-term basis, rather than a semester basis. According to Burr's Affidavit, the second term started on or around October 31, 2005, at about the time Chyma was suspended. Chyma attended the alternative high school during the second quarter and returned to South Tama County High

---

[19](...continued)
> While we were discussing the matter, the high school principal, Steve Burr, came into the office. After more discussion concerning the October 28, 2005, incident, Mr. Burr informed us that Kyle was suspended for ten days.

*See also* Affidavit of Todd Chyma (docket number 18-9 at 2), ¶ 3.

[20] *See* Deposition of Kyle Chyma (docket number 9-4 at 24); Tr. 41:16-42:3.

[21] *See* Appendix of Documents, Exhibit N (docket number 9-6 at 7).

[22] *See* Appendix of Documents, Exhibit O (docket number 9-6 at 8-9).

[23] *Id.*

[24] *See* Appendix of Documents, Exhibit R (docket number 9-6 at 15) ("This is a total of 40 days loss of participation from the first legal starting date of practice which is November 14, 2006.").

School on Monday, January 16, 2006. Chyma elected to graduate early in March 2006, at the end of the third term.

One of Chyma's principal complaints is the fact that he was unable to continue his chemistry class when he was required to transfer to the alternative high school. Chyma had completed one term of chemistry in the fall of 2005 and was scheduled to take chemistry during the second term. The chemistry class was unavailable, however, through the alternative high school. According to Burr, Chyma could have completed the chemistry class during the fourth term in the spring of 2006, had he not elected to graduate early. Chyma acknowledged in his deposition that he talked with school officials about taking the second-term chemistry class upon his return to the high school, but could not remember their response.[25]

Chyma also complains that on the Monday following the bus incident, he was approached by his wrestling coach, who "didn't have very nice words to say." Chyma concedes, however, that he does not know how the wrestling coach learned that he had attempted to bring alcohol onto a team bus.

> A. Then when I got the bus charge, that Monday, somehow my science teacher already found out about the charge before I even got suspended from school.
>
> Q. Did the science teacher--how do you know the science teacher knew already?
>
> A. He approached me and didn't have very nice words to say, because he was also my wrestling coach, but wrestling didn't start yet.
>
> Q. So your science teacher/wrestling coach approached you and basically chewed you out for getting in trouble like that?
>
> A. Yes.

---

[25] *See* Deposition of Kyle Chyma (docket number 9-4 at 23); Tr. 37:20-38:2.

| Q. | And did the wrestling coach/science teacher tell you how he found out about it? |
|---|---|
| A. | He never told me, no. |
| Q. | Who do you think might have known about the bus incident? |
| A. | Well, the football coach went and told the athletic director that morning, so him and the principal probably told the wrestling coaches, is what I was thinking. |

*See* Deposition of Kyle Chyma (docket number 9-4 at 25); Tr. 47:24-48:19.

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an

affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g.*, *Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. DISCUSSION

Chyma's Petition for Damages, originally brought in the Iowa District Court for Tama County, consists of two counts: Count I, entitled "Violation of Constitutional and Statutory Rights Under Color of Law," alleges that his suspension and transfer to the alternative school violated his right to due process under the Fourteenth Amendment, and that the suspension and transfer by Burr or Molachek exceeded their authority, citing Iowa Code Section 282.4. Count II of the Petition, entitled "Invasion of Privacy," alleges that Tomlinson and "the School Board" violated Chyma's right to privacy "as protected by the First Amendment" and the Family Education Rights and Privacy Act ("FERPA").

### A. Violation of Constitutional and Statutory Rights

### 1. Were Chyma's Due Process Rights Violated?

Chyma claims that in being suspended and required to attend an alternative school, he was deprived of his right to procedural due process.[26] The Fourteenth Amendment to

---

[26] Chyma's Petition is not specific with respect to the nature of the "due process rights" allegedly violated. In their brief, Defendants address both procedural due process and substantive due process. Defendants discuss substantive due process in terms of "[a] limited right to privacy." In his Amended Resistance (docket number 18), however,

(continued...)

the United States Constitution provides, among other things, that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Congress has afforded a remedy to persons whose constitutional rights are violated under color of state law. *See* 42 U.S.C. § 1983. A procedural due process claim under Section 1983 requires a two-step analysis: first, the Court must determine whether there exists a liberty or property interest which has been interfered with by the State; and second, the Court examines whether the procedures accompanying that deprivation were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). *See also Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000).

In *Goss v. Lopez*, 419 U.S. 565 (1975), the Court recognized that a student has a "property interest" to a public education.

> Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.

*Id.* at 574. Suspension of a student on grounds of misconduct may also invoke the "liberty interest" found in the Due Process Clause. *Id.*

> "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the Clause must be satisfied.

*Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).

The Court in *Goss* concluded that a 10-day suspension from school is not de minimis and "may not be imposed in complete disregard of the Due Process Clause." *Id.* at 576.

> [T]he total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child.

---

[26](...continued)
Chyma states that "Chyma's Petition does not assert a substantive due process claim."

> Neither the property interest in educational benefits
> temporarily denied nor the liberty interest in reputation, which
> is also implicated, is so insubstantial that suspensions may
> constitutionally be imposed by any procedure the school
> chooses, no matter how arbitrary.

*Id.* Accordingly, Chyma had a property interest and a liberty interest which were implicated.[27] Students facing suspension "must be given some kind of notice and afforded some kind of hearing." *Id.* at 579.

The second question which must be answered is whether the procedures associated with Chyma's suspension were "constitutionally sufficient." *Thompson*, 490 U.S. at 460. "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961).

The Court in *Goss* recognized that brief disciplinary suspensions "are almost countless," and therefore students are not entitled to "trial-type procedures." 419 U.S. at 583. "On the other hand, requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action." *Id.*

> There need be no delay between the time "notice" is given and
> the time of the hearing. In the great majority of cases the

---

[27] While the Court in *Goss* concluded that a student has a property interest and a liberty interest associated with a ten-day suspension from school, it is not clear that a student has a property interest in attending a particular school. *See, e.g., Langley v. Monroe County School Dist.*, 2008 WL 276084 (5th Cir.) ("A student's transfer to an alternative school for disciplinary reasons implicates no constitutionally-protected property interest") (citing *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26-27 (5th Cir. 1997)). For purposes of the instant action, however, the Court assumes, without deciding, that Chyma was entitled to procedural due process prior to being transferred to the alternative school.

> disciplinarian may informally discuss the alleged misconduct
> with the student minutes after it has occurred. We hold only
> that, in being given an opportunity to explain his version of the
> facts at this discussion, the student first be told what he is
> accused of doing and what the basis of the accusation is.

*Id.* at 582.

Chyma's Brief in Opposition (docket number 18-2) is somewhat imprecise regarding the manner in which he believes the procedure was lacking. Apparently, however, he makes no claim that he or his parents did not receive adequate notice of the hearing, or were unaware of the nature of the alleged misconduct. Chyma testified in his deposition that the football coach talked to his parents right after the game "so they knew right away."[28] Chyma knew that involvement with alcohol on school grounds could subject him to discipline, such as being suspended from school.[29]

In his response to Defendants' Statement of Material Facts, Chyma denies that he "was afforded the opportunity to present his version of the events regarding the bus incident to the school guidance counselor and to the principal."[30] However, the citations to the record offered by Chyma in this regard belie his denial. In his affidavit, Chyma states that he was called to the office and "was asked about" the school bus incident.[31] (Initially, Chyma lied and denied knowing about the alcohol.) Chyma's affidavit further states that after his parents were called to the guidance counselor's office, the "school bus incident was discussed." After the principal came to the office, "[t]he incident was discussed more." This testimony is consistent with the affidavit of Julie Chyma, which indicates that she was called to the school and the matter was discussed with the guidance

---

[28] *See* Deposition of Kyle Chyma (docket number 9-4 at 27); Tr. 53:21-54:2.

[29] *See* Plaintiffs' Response to Statement of Material Facts (docket number 18-3 at 7).

[30] *See Id.*

[31] *See* Affidavit of Kyle Chyma (docket number 18-6 at 2).

counselor and the high school principal. According to Julie Chyma's affidavit, "[a]fter more discussion concerning the October 28, 2005, incident, Mr. Burr informed us that Kyle was suspended for ten days."[32] The affidavit of Chyma's father, Todd Chyma, confirms that after the principal came to the office, "[f]urther discussion was gone into."[33]

Accordingly, notwithstanding his denial, it is undisputed that Chyma was given an opportunity to present his version of the events.[34] No formal hearing is required. In these circumstances, all that is required is "effective notice and informal hearing permitting the student to give his version of the events." *Goss*, 419 U.S. at 583. *See also Jennings v. Wentzville R-IV School District*, 397 F.3d 1118, 1124 (8th Cir. 2005) (the students and their parents "were given the 'opportunity to present their side of the story,' which is all that is required") (citing *Goss* at 581).

Chyma admits that in addition to being orally advised of his ten-day suspension, his parents received a letter regarding his suspension and placement at the alternative high school. Chyma denies, however, that he and his parents were given an opportunity to appeal the discipline imposed by the principal. The Court notes that the affidavits of Chyma and his parents are contradictory in this regard. In his affidavit, Chyma states:

> The letter did not advise me that I could have Mr. Molachek review the matter or appeal Mr. Burr's action to the School Board.

*See* Affidavit of Kyle Chyma (docket number 18-6 at 2). On the other hand, Julie Chyma's affidavit states:

> The letter concluded with a statement that Mr. Burr's disciplinary actions could be reviewed, modified, or subject to a different recommendation by the high school superintendent,

---

[32] *See* Affidavit of Julie Chyma (docket number 18-7 at 2).

[33] *See* Affidavit of Todd Chyma (docket number 18-9 at 2).

[34] In any event, the facts of the underlying incident are undisputed. Chyma admitted then, and he admits now, that he knowingly brought alcohol onto the team bus.

> Larry Molachek. The letter also said we could have the action
> reviewed by appeal to the superintendent or the School Board.

*See* Affidavit of Julie Chyma (docket number 18-7 at 2). Similarly, the affidavit of Todd

Chyma provides:

> Mr. Burr's letter concluded with a statement that his decision
> could be reviewed by the school's superintendent, Larry
> Molachek, or the School Board.

*See* Affidavit of Todd Chyma (docket number 18-9 at 2). The best evidence, however, is

the letter itself, which provided:

> The Superintendent of the South Tama County School District
> will review this disciplinary matter. He retains the authority
> to review, modify or recommend further disciplinary action by
> the South Tama County School Board. Likewise you have the
> right of appeal of this action to the superintendent of the
> school district.

*See* Appendix of Documents, Exhibit O (docket number 9-6 at 9).

Clearly, Chyma and his parents were notified of their right to appeal to

Superintendent Molachek. According to her affidavit, Julie Chyma called Burr upon

receipt of the letter and "pleaded with him to reconsider and not place Kyle at the

Alternative High School."[35] Mr. Burr told Julie Chyma that he would not reconsider and

advised her to "take the matter up with the superintendent." Julie Chyma then contacted

Molachek and again asked that Kyle not be transferred to the alternative high school.

According to Julie Chyma's affidavit, "Mr. Molachek told me he would check into the

matter with Mr. Burr and get back to me."[36] Apparently, Molachek never contacted Julie

Chyma and she took no further action to pursue the matter.

> I never heard back from either Mr. Molachek or Mr. Burr. If
> they had gotten back to me, without a change of the

---

[35] *See* Affidavit of Julie Chyma (docket number 18-7 at 2).

[36] *Id.* at 3.

> placement, we would have appealed the situation to the School
> Board.

*Id.* According to Todd Chyma's affidavit, "[a]fter Julie had spoken with Mr. Burr and Mr. Molachek and we didn't hear back from either one, Julie took Kyle to the Alternative High School where he was enrolled." *See* Affidavit of Todd Chyma (docket number 18-9 at 2).

The Court notes that Chyma has not cited any case which holds that procedural due process under these circumstances includes a right to appeal. Rather, as set forth above, "students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Goss*, 419 U.S. at 579. Even if a right to appeal is constitutionally mandated, however, the Court concludes that it has been met in this case. Julie Chyma's oral appeal to the superintendant was rejected when he failed to take any action to reverse Burr's decision.[37]

Even viewing the evidence in the light most favorable to Chyma, the Court concludes that he received appropriate notice and an informal hearing prior to any disciplinary action. Chyma was given a fair opportunity to state his version of the events. An appeal to the superintendent of schools was unsuccessful. The Court concludes that the constitutional requirement of due process has been met.

### 2.    *Did Defendants Comply With Iowa Code Section 282.4?*

Next, Chyma apparently argues that his constitutional right to due process was violated by Defendants' failure to comply with Iowa Code Section 282.4. In his Petition, Chyma alleges that "[p]ursuant to Iowa Code § 282.4, neither Burr or Molachek had the power and authority to impose the suspension or transfer: only the School Board did."[38]

---

[37] Nothing in Burr's letter of November 4, 2005 refers to a right to appeal to the school board. Rather, it provides for appeal to "the superintendent of the school district."

[38] *See* Petition for Damages (docket number 2-4), ¶ 16 at 3.

Chyma concedes that the principal had the authority to impose a ten-day suspension,[39] but argues that factually the suspension in this case was for more than ten days.

As discussed above, Chyma and his parents claim in their affidavits that the meeting with the guidance counselor and the principal occurred on Monday, October 31, 2005, and Chyma was suspended from school effective immediately. While Chyma apparently met with the school counselor and principal on October 31 and gave a written statement on that date, it appears likely that the meeting including his parents occurred on the following day. In his affidavit, principal Steve Burr claims that he met with Chyma in the afternoon of October 31, 2005 and then met with Chyma and his parents on November 1, 2005.[40] Burr's testimony is consistent with Chyma's attendance record.[41]

The Court finds it unnecessary to resolve this question, however, since it is undisputed that the suspension was for a period of ten school days. In their affidavits, Chyma and his parents indicate that they were told that the suspension would be for ten days and in his letter of November 4, 2005, Burr advised Mr. and Mrs. Chyma that the suspension was for ten school days:

> Kyle is suspended out-of-school for a period of 10 (ten) school days starting today (November 1, 2005) and ending on the afternoon of November 14, 2005.

Appendix of Documents, Exhibit O (docket number 9-6 at 8).

There is nothing in the record to suggest that Chyma or his parents ever complained to Burr, Molachek, or anyone else, that his suspension actually started on October 31,

---

[39] Iowa Code Section 282.4(1) provides, in part, that "[t]he board may confer upon any teacher, principal, or superintendent the power temporarily to suspend a student, notice of the suspension being at once given in writing to the president of the board." Here, a copy of the November 4, 2005 suspension letter was sent to Joe Lyon, Board President.

[40] *See* Affidavit of Steve Burr (docket number 22-2 at 8).

[41] *See* Period Attendance Report (docket number 22-2 at 3).

rather than November 1. If Chyma believed that the period associated with his ten-day suspension was being miscalculated and should have ended on Friday, November 11, rather than Monday, November 14, he apparently did not raise that issue with Defendants. It is undisputed that the suspension was for a period of ten school days. If Chyma or his parents believed that Burr was mistaken regarding when the suspension began, and was miscounting the days in determining when the suspension would end, they should have alerted Defendants of the alleged error. The Court concludes that Chyma was not suspended for more than ten days, the provisions of Iowa Code Section 282.4(1) were not violated, and there was no violation of Chyma's constitutional right to procedural due process.[42]

### B. Invasion of Privacy

### 1. Were Chyma's First Amendment Rights Violated?

In Count II of his Petition, Chyma makes the following factual allegation:

> Tomlinson failed to keep the information confidential and made said information known to other students at the High School resulting in Chyma's humiliation. Chyma's mother spoke with a member of the School Board about Tomlinson's invasion of Chyman's [sic] privacy but the School Board did nothing about the matter.

Petition for Damages (docket number 2-4), ¶ 19 at 4. The "information" apparently referred to by Chyma is his attempt to bring alcohol on the team bus and the subsequent disciplinary action.[43] Chyma asserts a claim based on "invasion of privacy."

> Tomlinson's and the School Board's conduct violated Chyma's right to privacy as protected by the First Amendment to the

---

[42] The Court notes that Chyma makes no claim arising from the limitations placed on his participation in interscholastic athletics.

[43] Despite complaining in his deposition that Tomlinson improperly told the National Honor Society adviser of his arrest for OWI, Chyma repeatedly indicates in his response to the Defendants' Statement of Material Facts that he makes no claim arising from the OWI incident.

> Constitution of the United States and Article 1, Section 7, of
> the Constitution of Iowa and the Federal Family Education
> Rights and Privacy Act (20 U.S.C. § 1232g *et seq.*).

Petition for Damages (docket number 2-4), ¶ 20 at 4.

Chyma's legal theory is unclear. Defendants interpret the Petition as claiming that Tomlinson violated Chyma's "right to substantive due process by invading his privacy by failing to keep the underlying facts and circumstances surrounding his suspension and transfer confidential." In his Amended Resistance, however, Chyma states that "Chyma's Petition does not assert a substantive due process claim."[44] In his Brief in Opposition to the Motion for Summary Judgment, Chyma makes no reference to the alleged cause of action based on a violation of right to privacy and offers no authority in support of that claim.[45] Accordingly, the Court concludes that Chyma's claim for recovery based on an alleged violation of his constitutional "right of privacy," as alleged in Count II of his Petition, has been abandoned. *Geach v. Chertoff*, 444 F.3d 940, 946 (8th Cir. 2006) at n.7; *Structural Polymer Group, Ltd. v. Zoltek Corp.*, 2007 WL 1083758 (E.D. Mo.2007) at *1 ("The Court deems abandoned any claims for relief not supported by argument or citation to legal authority.").

The Court notes parenthetically, however, that a cause of action for breach of privacy would not lie under these circumstances in any event. Although the "right of privacy" is not found explicitly in the Constitution, it can be found in a penumbra of rights emanating from other constitutional guarantees. *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965).

> The Supreme Court has recognized that notions of substantive
> due process contained within the Fourteenth Amendment

---

[44] *See* Plaintiff's Amended Resistance (docket number 18), ¶¶ 5 and 6 at 2.

[45] Inexplicably, the Table of Contents to Chyma's brief refers to "Privacy Claims" on page 12, but no reference can be found in the body of the brief. *See* Plaintiff's Brief in Opposition (docket number 18-2).

> safeguard individuals from unwarranted governmental
> intrusions into their personal lives. This right to privacy
> actually encompasses two separate types of interest. "One is
> the individual interest in avoiding disclosure of personal
> matters, and another is the interest in independence in making
> certain kinds of important decisions."

*Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) (quoting *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)).

In this case, Chyma raises the first interest, which is sometimes called the "right to confidentiality." "This protection against public dissemination of information is limited and extends only to highly personal matters representing 'the most intimate aspects of human affairs.'" *Id.* Information of the type allegedly disclosed by Tomlinson to the wrestling coach is not of a constitutional dimension.

> [W]e hold that to violate Appellant's constitutional right of
> privacy the information disclosed must be either a shocking
> degradation or an egregious humiliation of her to further some
> specific state interest, or a flagrant breach of a pledge of
> confidentiality which was instrumental in obtaining the
> personal information.

*Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir. 1993) (cited with approval in *Eagle*, 88 F.3d at 625).

Even if a disclosure of information regarding the bus incident would support a substantive due process claim, Chyma has failed to generate a genuine issue of material fact regarding such a claim. Chyma's "violation of privacy" claim is based on the fact that on the Monday following the bus incident, "somehow my science teacher already found out about the charge before I even got suspended from school."[46] Chyma's science teacher, who was also his wrestling coach, approached him on Monday morning and "chewed him out." In his deposition, however, Chyma acknowledged that he did not know how the wrestling coach learned of the incident. Chyma speculated that the football

---

[46] *See* Deposition of Kyle Chyma (docket number 9-4 at 25); Tr. 47:24-48:1.

coach told the athletic director (Tomlinson), who then told the wrestling coach.[47] It is also possible, however, that the wrestling coach learned of the incident from another football player and/or wrestler. Mere speculation or conjecture is not sufficient to avoid the award of summary judgment. *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994).

## 2. Will FERPA Support a Section 1983 Claim?

As set forth above, Chyma also claims in Count II of his Petition that Tomlinson's conduct violated his right to privacy as protected by the Family Education Rights and Privacy Act (20 U.S.C. § 1232g *et seq.*). In his Brief (docket number 18-2) filed in opposition to the Motion for Summary Judgment, however, Chyma makes no reference to the FERPA and does not cite any authority in support of his claim.

The FERPA generally withholds funding to educational agencies or institutions which have "a policy or practice of permitting the release of education records" without the written consent of the student or his parents, with certain exceptions. 20 U.S.C. § 1232g(b)(1). In *Gonzaga University v. Doe*, 536 U.S. 273 (2002), however, the Court resolved a dispute between various jurisdictions and held that the FERPA's nondisclosure provisions created no personal rights to enforce under Section 1983.

> Respondent contends that this statutory regime confers upon any student enrolled at a covered school or institution a federal right, enforceable in suits for damages under § 1983, not to have "education records" disclosed to unauthorized persons without the student's express written consent. But we have

---

[47] *See Id.*; Tr. 48:11-19.

Q. And did the wrestling coach/science teacher tell you how he found out about it?

A. He never told me, no.

Q. Who do you think might have known about the bus incident?

A. Well, the football coach went and told the athletic director that morning, so him and the principal probably told the wrestling coaches, is what I was thinking.

> never before held, and decline to do so here, that spending
> legislation drafted in terms resembling those of FERPA can
> confer enforceable rights.

*Id.* at 279. The Court concludes that Chyma's reliance on FERPA in asserting a Section 1983 action is misplaced.

## VI. SUMMARY

In summary, the Court concludes that Chyma's procedural due process rights were not violated, nor did the ten-day suspension and placement in the alternative school exceed the principal's authority. Essentially, Plaintiff believes that the punishment imposed for his transgression was unduly harsh. There being no constitutional or statutory violation, however, it is not for the Court to second-guess the punishment imposed. *Goss*, 419 U.S. at 578.

## VII. ORDER

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (docket number 9) filed by the Defendants is hereby **GRANTED**. The Petition for Damages (docket number 2-4) filed by Plaintiff is hereby **DISMISSED**.

DATED this 8th day of September, 2008.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA